Thank you, Your Honor, and may it please the Court, Chris Mischel for Appellant to Tcv. This is a case of startling government overreach. The operative statute allows Jenny May to extinguish the interests of securities issuers by contract, but it is undisputed that Tcv is not an issuer and had no contract with Jenny May. Separately, the statute limits Jenny May to extinguishing mortgages that are pooled and securitized, but it is undisputed that the tail payments at issue here were not pooled or securitized. But they were part of the mortgage. They were not, under the proper understanding that we respectfully submit of the term mortgage in this statute. They weren't part of the mortgages. I think that's not the right understanding of it. I do want to emphasize... Were they part of the mortgages or not? There was a new agreement by which the tails accrued from the mortgagors? Well, so here's how it works. The mortgage, when there's a... This case is about guaranteed securities on mortgages, and when there's a security created, it's created by the initial draw on the mortgage. If you have a mortgage with a $500,000 principal balance, that's originally created, pooled, and securitized. What we're talking about in this case are additional later payments, things like mortgage interest payments and draws that the seniors often in these cases can receive, which are different from the mortgages. There's evidence in the record about that, but I think actually the statutory text and structure itself provides the strongest evidence on this point. The statute starts with a reference to Ginnie Mae's power in connection with any guarantee under this subsection. And there's no dispute among the parties that the tails we're talking about here are not guaranteed. They are separate from the guaranteed mortgages. So I do think the tails are separate. I want to emphasize that's not the only reason that we think this is beyond statutory authority. You wouldn't have to address that question, but that is one basis to get there. Okay. So I'm a little bit confused on your answer. Texas capitals tail agreement was subject to the rights and interests of Ginnie Mae, right? That is correct. Yes. So why does that not include Ginnie Mae's rights to extinguish RMF's interest? It does include Ginnie Mae's rights to extinguish RMF's interest, but of course the question in this case is whether Ginnie Mae could extinguish TCB's interest. So the critical point is that TCB's interest is a lien which is separate and apart from RMF's interest. But it's entirely derived from RMF's interest. It's derived from RMF's interest, but it's a separate interest. But you've also got to deal with the statutory language that says when Ginnie Mae extinguishes RMF's interest, that it has absolute ownership of those mortgages. I agree with that, but it has absolute ownership of RMF's interest. It does not have separate ownership of TCB's interest. I think the easiest way to understand this, this is an important document in the record. It's cited at page 26 of our opening brief and 2026 of the record on appeal. This is an agreement that Ginnie Mae made with another lender to RMF, another lender that was similarly situated to TCB. I think it was called Ledenhall. And critically, in that contract, Ginnie Mae says to Ledenhall, if we extinguish RMF's interest, quote, your interest will be extinguished as well. So Ginnie Mae certainly has the ability to write a contract with an issuer saying that if, sorry, with a lender saying that if we- But in this contract, they've got the power under the statute, and your argument is they don't have the power under the statute to do what they did. Right, and that's why they wrote that contract. I don't think there's any reason why- I think the statute varies on what the underlying contracts say. The statute says what the statute says. Well, I mean, I'm happy to argue this case under the text of the statute. The statute says they can extinguish the interest of issuers, and we're not an issuer. It says they can extinguish the interest by contract, and we had no contract with Ginnie Mae, and we've talked about the mortgage point. So I do think the most natural understanding of the statutory text strongly favors our side as the district court. We'd respectfully submit correctly understood initially before the district court changed its mind. And I do think it's difficult to understand what purpose there would be for entering into the kind of contract with other lenders that I was just discussing if Ginnie Mae, in fact, did have the statutory power. Well, just, Clarence, wasn't it just saying we can do this, and we just want to remind you of that? I mean, I don't think that it would have been necessary to write a contract to just remind them of something. Well, people remind people of other things. By the way, we still retain this power that, you know, as just an additional reminder. That happens all the time. I mean, people do remind people of other things, but I think when you're looking at the party's commercial relationship, the contract has to be understood to mean more than that. So you're saying because they didn't send a letter to Texas Capital Bank like that, that therefore they didn't have the power to do this? Well, not quite. I'm saying two things. The statute doesn't give them the power to do that. If they had formed a contract, I think I'd respectfully characterize it more than just sending a letter. If they had formed a binding bilateral contract with TCB of the kind that they did with Ledenhall, then yes, they would have been able to do that. But the critical point is that they did it with Ledenhall and not with TCB. So they had power there, but they don't have power here. What exactly was the nature of RMF's property right in the tails prior to Ginnie Mae's extinguishment? RMF's interest? So RMF had an interest in the continuing stream of payments on the tails. That's what I was talking about with Judge Wilson earlier. What's the nature of the right? Where does the right come from? So I mean, I think it originally comes from the mortgages themselves. And then there was a guarantee agreement between RMF and Ginnie Mae in which RMF conveys to Ginnie Mae some interests, and then Ginnie Mae conveys back to RMF other interests. One of those, Section 3.08 of the guarantee agreement I think is important in this case. That provides that RMF can transfer its interest as long as it does so with Ginnie Mae's consent. And in this case, there's no dispute that Ginnie Mae consented to RMF's transfer or to the creation of the lien on its interests. After all, as we've explained, Ginnie Mae was urging TCB to make these loans. It has never suggested at any point that it doesn't consent. I do think, just going back to the letter point, another helpful piece of information in the case is the reservation of rights that Ginnie Mae insisted on in the bankruptcy order. There, again, we have a tellingly sort of expressio unius inference that you can draw because the order, the reservation of rights, refers to all of these other lenders with whom Ginnie Mae has a relationship and reserves its rights there. But it does not refer to any similar reservation of rights for TCB, even though TCB is separately referenced in the dip that are in possession order from the bankruptcy court. Cites for that are on page eight of our reply brief. Again, I think the government itself, Ginnie Mae itself, understood that TCB had a separate interest and that it had not taken the kind of steps with respect to TCB that it had with respect to other lenders. That doesn't mean it couldn't in the future. We're not asking for any kind of rule that would destabilize this industry. Ginnie Mae has the power to do this if it wants to and if it can get lenders to agree to it. But what it doesn't have the power to do is what it's trying to do in this case. Does it have to get lenders to agree to it? Or does it just have the power? It has. This is a critical point, Chief Judge Elrod. It has the power to extinguish the interests of the issuers. I mean, this is a case about issuers of the statute is about issuers of securities. But we critically are not an issuer of securities. We are a lender. And so for Ginnie Mae to extinguish our interests, it has to have authority from somewhere. But your interest is derivative and smaller than the original interest. So the fact that they didn't do something, at any time they could step in and do that. They can extinguish the large. We're not asking for RMF's full interest, to be clear. We're only asking for our lien on the portion of RMF. But your lien's only there because RMF has this interest in the mortgage, which Ginnie Mae can extinguish. In other words, it's derivative, just like the Chief just said. So just following up on that, if your lien attaches to RMF's interest, then how could you end up with a greater right than RMF itself had after the default? Right. We're not asking for a greater right than RMF had after the default. But you are. We're not. We're asking for the lien that RMF granted to us. That is our right. That's not RMF's right. Where does it say that your lien is survivable, even if RMF's interest is extinguished? Well, I have two responses to that. First, I think it's a familiar understanding of commercial law. We've cited cases... In the statute. So, I mean, I'd respectfully say, you know, I don't think I have to prove that the statute protects our lien. I think the government has to prove that the statute authorizes it to extinguish our lien. So I'm not suggesting the statute provides us independent protection. Our argument is that the statute doesn't provide the government with authority to do what it's doing to us. You don't have any rights vis-a-vis the government. You had rights vis-a-vis the RMF. So the government can do what it could do with RMF's interest, but you didn't make a contract with the government in which they bore their right to take the money, which is to take the tails. So why would you have a right enforceable against them? I mean, to be clear, we're not asserting a statutory right. You know, the question in the case is... A contractual right. You don't have a contract with them. We're not asserting a contractual right either. I mean, we have an APA claim that says the government doesn't have authority to do anything unless a statute or some other source of authority provides it that. We're not even talking about whether there's immunity or any of those kind of issues here. That's an even further layer of this. Well, I think there's no doubt there's a waiver of sovereign immunity under the APA for the federal claim here. I don't think the government's arguing to the contrary on that point. I'm happy to discuss that. And then the state claim, you let that go. So I think the state claim... I mean, I think everybody in the case agrees, for the most part at least, the state claim rises or falls with the federal claim. The only... For purposes of this stage of the case, at least. The only prong that the district court relied on in granting judgment on the state claim was that the government had authority to do it. So if the government didn't have authority to do it, that is in our favor on both the APA claim and the state claim. So in 1721 G1, so where in that provision do you find a textual distinction between the mortgage and the later arising tail balance? So here's where I see it. The word mortgage is in the statute. So that's... You have to start with the text of the statute. The critical move, and I think I was discussing this with Judge Wilson earlier, is if you look at the beginning of the statute, it starts by saying, Ginnie Mae is empowered in connection with any guarantee under this subsection. There's also a reference later to guarantees. I think the hint to understand what mortgage means is that it has to be understood against the backdrop of what Ginnie Mae is guaranteeing. And there's no dispute that Ginnie Mae is not guaranteeing the tails. It's only guaranteeing the mortgages understood as... But aren't the tails in connection with the guarantee of the mortgage from which the tail comes? So there can be guarantees. To be clear, this is a somewhat complicated area, but there can be guarantees of securities that are issued based on tails. But everybody agrees that is different than a guarantee of securities that are based on mortgages. And everyone also agrees that in this case, there is no guarantee of securities based on tails. All of that reiterates... But it doesn't have to be a guarantee based on the tail. It has to be... The agency's empowered in connection with any guarantee under the subsection. And then it goes on to talk about the mortgages. In other words, just because tail isn't mentioned or every segment of what can be securitized or not securitized, pooled, not pooled, however the industry works, that's not what the statute says. The statute says the agency has the power to extinguish in connection with any guarantee related to one of these mortgages. And I think that just restates the question of how to define mortgage. And for the reasons we've submitted, we think it is best understood to exclude tails. If I might say, just a word... In the statute, where do you draw that in the statute? I draw it from the word mortgage, read against the statutory structure that I've just discussed and read against the understanding in the industry. We, for example, cite an expert report that explains these are separate. The Supreme Court has said often that cases... The statutory language in particular industries needs to be understood against the backdrop of that industry. The Van Buren computer fraud case is a good recent example. If I might just say one word about the arbitrary and capricious claim, I don't think there's any dispute. We have pled in great detail the facts that underlie an arbitrary and capricious claim here. But you didn't plead the cause of action, and you actually omitted that part of the statute. You didn't refer to the statute at all in the complaint, did you? Not that part. I mean, I want to answer directly. We definitely cited the APA. We definitely did plead the APA cause of action. But you deleted, you omitted arbitrary and capricious. We did, but that... And you never went back and amended even when the district court said, I'm not reaching it. That's true. Why in the world wouldn't you do that? Why in the world wouldn't you do that? And then, but yet come up here and say you've got that claim. Well, we've always said we had that claim. That's certainly not a new argument on appeal. But the district court rejected it and said it wasn't in your complaint, and then you did nothing to ameliorate that. Well, with respect, it's because we didn't have to do anything, because the Supreme Court has been unbelievably clear in cases like Johnson versus City of Shelby that you do not have to plead the legal theory, right? Miller says that, this court has said that. In City of Shelby, there was only like one claim that could be not debatable among a series of claims. I mean, you've got to concede that a statutory authority claim under the APA is very different than an arbitrary and capricious action under the APA. Yes, they're different theories. You know, so, but I... They're different claims. I don't think they're different claims. I mean, I think it's a claim under the same statute. I think, though, with respect, Judge Wilson, I mean, if you say you have to plead the legal theory, that is very hard to... You may say it would have been a better practice to plead the legal theory, and I'm not sure I'd dispute that, but I think if you say you have to plead the legal theory and the consequence of that is dismissal, that's very inconsistent with Supreme Court and other law. Did you have an opportunity to state your APA argument? I just want to make sure that you fully opened. I've got plenty more to say. No, but I mean, I'm just... You can take 30 seconds, because we've asked you a lot of questions today. I appreciate all the questions, and I haven't answered more, but I would like to say a little more about it. I do think this is a paradigmatic, arbitrary and capricious agency action. It is a classic bait and switch under which the government promised that we would have access to this collateral, and then with no explanation, with no recognition that it was changing position, and with no recognition of our reliance interest, which is a really bad trifecta in administrative law, to have all three of those, the government then, in the middle of a conference call, with disputes within the government itself, told us that it was erasing our collateral. I mean, that is about as clear as you can get when it comes to a bait and switch, arbitrary and capricious governmental action, and those facts, the facts, we agree, not the legal theory, but the facts are alleged in great detail in the complaint, which is enough to allow that aspect of the claim to survive a motion to dismiss and to proceed. Okay, you've saved time for oral argument, I mean, for rebuttal. I apologize for rebuttal. It doesn't matter. Good morning, may it please the court. This is a case about extinguishment, which the statute clearly describes as the mortgages becoming the absolute property of Chinime. The tales at issue in this case are part of the mortgage, and the mortgages themselves become the absolute property of Chinime. The statutory text alone is enough to decide this. The context, the surrounding uses of the word mortgage all clearly refer to mortgages in their entirety. If Congress had wanted to refer to only the parts of the mortgages that were guaranteed and securitized, they had a word to use. It appears elsewhere in the statute. They described it as participation. The word participation shows up quite a bit in the Chinime MBS guide. It shows up in the expert opinion that Texas Capital Bank put into the record over our objection during the summary judgment proceedings. And the participations are the portions that become securitized, chopped up and sold to investors, backed by the Chinime guarantee with full faith and credit of the United States government. There are additional balances that get tacked on after the fact. Those advances also appear in the statute. I'm stepping back to the work. So if these were those, then you couldn't have done what you did, not you, the government, right? If these were those participations that were guaranteed and that sort of thing, right? If the participations may still be extinguished, they were extinguished. They were extinguished in this case. I mean, they could be extinguished at the whim of Chinime. Not at the whim, Your Honor. The issuer has to default on the guarantee agreement. It is a remedy for contractual default. Okay. I have a question about the statute. The statute in Chinime predate government-backed reverse mortgages. Forward mortgages don't have tails, as I understand. And the mortgages securitized portion of the mortgage are one and the same. Is that not, that may be false, not exactly correct, but I think that's correct. I believe everything you just said is correct. Okay. I'm not an expert in this. I expect y'all to be more of an expert than I am on this. But should that affect our reading of the statute at all? It is useful when we look to other extinguishments of non-reverse regular forward mortgages. If there are portions of the balance that were not securitized and are not backed by any Chinime guarantee, if they are still part of the mortgage, which tails are, then those parts become subject to extinguishment upon issuer default, which happened in this case. So in the NBD Bank case, which is a district court case that is not binding on this court, of course, it still is instructive to have the court in that case analyze what money is actually at issue here. And it was money set aside to pay, I believe, property taxes and things of that nature. Those balances were still part of the mortgages. And so the act of extinguishment, when Chinime extinguished the issuer's interests, the entirety of the mortgages became Chinime's property. Subject only to, so if there are participations, which there always are, those rights that the investors, the securities holders have in the Chinime-backed securities, they still have the right to payment because this is a statutory scheme that allows Chinime to administer this program in connection with its guarantee, backstopping these securities. When somebody buys and sells these securities, they know, I'm entitled to be paid on time, in full, according to the terms of these securities. So what do you say to the argument by your friend on the other side that there was a terrible bait and switch, that Chinime gave assurances, you would not have ever gotten, they would never have gotten into this, but for this, you know, to take up these loans, but for this promise of this security, and then all of a sudden, in a phone call, it was retracted. And so it's a terrible bait and switch, and they were led into this by the government, acting disreputably. Do you have anything to say on that? Yes, Your Honor. We have two things to say in response to that. First, we would dispute the characterization of the facts. The facts that were alleged in the complaint, we believe are contradicted by the agency's actual record. Well, can you tell us what those were, please? The portions of the administrative record that contradict the complaints. Yes, did the government give these assurances at the time these loans were being undertaken? And did the government then subsequently withdraw it, unilaterally, all of a sudden? Did that happen? Your Honor, we don't have a record of that. And because of the procedural posture of this case of Texas Capital Bank moving for summary judgment before discovery had closed and before any depositions were taken, those factual allegations were never reduced to any kind of declaration or deposition testimony that could be included in the summary judgment proceedings. All we have is the administrative record. And at least in writing, what we have is a back and forth from Texas Capital Bank seeking assurances in the record and Bankruptcy Council for Ginnie Mae coming back and saying we cannot give those assurances. And then the agency, Ginnie Mae, following up a few days later with a formal letter on Ginnie Mae letterhead signed by an official at Ginnie Mae saying you have asked us for assurances along these lines. As we have told you before, we do not have the authority to do so. And so we would dispute the factual characterization in the complaint. We would also argue that those facts are not material. The statute says what it says. The effect of these contracts are what they are. Ginnie Mae, by exercising its right of extinguishment with respect to RMF, the consequences that flow from that is that Texas Capital Bank leans on RMF's interests in the tales, not directly on the tales themselves. I would like to be clear. Texas Capital Bank had a lean on RMF's interests in the tales. It did not have a lean on the tales directly. And so when the extinguishment happened in accordance with the guarantee agreement as authorized by the statute, the only thing that could happen from that point on is that the collateral used to secure RMF's obligations to TCB were extinguished. There's nothing left. Is there any dispute about the nature of TCB's lean? In other words, would TCB get up, I imagine he will on rebuttal, counsel will, and say, no, we had an interest in the tales themselves versus RMF's interest in the tales? I believe my colleague will have more to say on that from his point of view. But I mean, is it under dispute? I don't believe that it is. The RMF interests themselves were extinguished, but the main dispute is not what happened, but is the characterization. In Texas Capital Bank's briefs, they describe it as a transfer. In the complaint, they describe it as a seizure. These are not terms of art. The term of art here is extinguishment. And extinguishment is different from a transfer. And if you look at the record, December 2020, December 2021, when all of this was happening, the parties, the stakeholders, everybody came to the table. They were looking for a way to take RMF's portfolio of quite a few loans, quite a few mortgages, and see if they could get them transferred to a standby issuer. And if they would be transferred under that procedure, I think TCB's liens on RMF's interests would have survived that transfer from RMF to another issuer. What they didn't do, what they couldn't do, was survive an extinguishment of RMF's interests. So even if, what if Jenny May had given assurances, hypothetically, that, no, we're not going to extinguish. Or that, you know, you can still continue on and we're not going to, we want to help the commercial viability of this situation. It's my understanding that that wouldn't matter factually, because Jenny May still possessed the power. Even if it gave assurances as the government, it could still do that. Even if that would seem that it was bad or not pleasant, that Jenny May would still have that power. Even if there had been a letter specifically saying, we're not going to do this. Yes, Your Honor, it would be a more difficult case in that hypothetical circumstance. But Jenny May has an obligation. It is mandated by its charter to look out for the public fisc. It's not allowed to give away money for no reason. If it has to step in and back its guarantee with respect to RMF's obligations to the securities holders, which it did, which was the central concern of Jenny May during RMF's bankruptcy. If it had to step in and pay those securities holders, it needed to be able to draw on the value of the mortgages themselves in their entirety. And the entire bundle of rights matters, including a lot of the rights that are not at issue in this appeal. The mortgage servicing rights, which by the way, were pledged to Leidenhall or Leidenhall, however we pronounce this other lender's name, and acknowledged in an acknowledgement agreement with three parties, Jenny May, RMF, and Leidenhall, those mortgage servicing rights are very important because they're how tales are created in the first place. If there's not an issuer servicing the mortgages, the homeowner who happens to be expecting that monthly payment on their reverse mortgage, they want that money to come in, they're living on it, somebody has to pay it. And that somebody was always RMF before its bankruptcy. That money comes in, they use the money, the balance in their mortgage goes up by the amount that they were paid. And that new balance, which doesn't back any, you know, Jenny May backed security, guaranteed security at that point, is what we've been referring to as tail. That's the tail. That's the tail. If TCB had an interest directly in the tail, would it change the outcome of this case? Would the interest have survived the extinguishment? In that hypothetical, we would argue no, because the statute would not authorize some sort of contractual arrangement in which that is possible. So the statute, the statutory power is the same either way. The absolute property that Jenny May took on extinguishment is still absolute. It's not subject to any interest in the tail. And your argument, as I apprehended, is it's even more clearly not subject to an interest in an interest in the tail. Yes, Your Honor. And what TCB had here was an interest in RMF's interest in the tail. Yes, Your Honor. And RMF's interest in that tail was a right to be paid, of course, subject to Jenny May's right of extinguishment if RMF defaulted on the guarantee agreement, which it did. So in this case, it is really just about Jenny May's own actions with respect to RMF and the consequences that flow from that. Jenny May did not target or single out TCB for any special treatment. It was extinguishment of RMF's interest in its entire portfolio to include the mortgage servicing rights, to include the right of foreclosure with respect to the underlying homeowners, with respect to the balances that had already been securitized in participations, and with respect to the balances that had not yet been securitized that we now talk about as tails. The entire bundle of rights forms the mortgage. The mortgage itself was extinguished. RMF's interest in the mortgages were extinguished in their entirety, and there was nothing left. To answer your earlier question, Your Honor, if the promise had been unambiguously made and there was no factual dispute, we would argue that that promise would exceed Jenny May's statutory authority. Jenny May cannot split the baby and say, I'm going to extinguish RMF's own interest, but I'm going to let the tail interest somehow survive in this limbo. The statute doesn't give any wiggle room in 1721 G1. It says the absolute property, and it does carve out a set of obligations and obligations to the securities holders not anybody else. And in that circumstance, when Jenny May exercises that right of extinguishment, it has no statutory authority to do anything other than what it did. Extinguishment is total. It is complete. There are also other statutory obligations that Jenny May has to protect its own interests, and I would point out to 1721 B as in Bravo. It describes Jenny May's own obligations. It cannot commit to more obligations than it has assets to back those obligations. And it instructs Jenny May and the world on how to treat different assets and liabilities from an accounting perspective. It describes the association's ownership. It describes as an asset the association's ownership under the A4 said separate accountability, and then it lists liability. Free from any liens or encumbrances of cash, mortgages, and obligations of the United States are guaranteed thereby, or obligations, participations, or other instruments. So if there are mortgages in which Jenny May owns the interest in, it still has to subtract its outgoing obligations under the participations that are part of that mortgage when doing the balance sheet math of what the assets and liabilities are. So if Congress had wanted to only give Jenny May the authority to extinguish only the portions of mortgages that back a Jenny May-guaranteed security, they would have used the word participations rather than the word mortgages. Anybody have anything else? I think we have your argument unless you have something further. Your Honor, I'm happy to talk about the other counts as well, the Texas tort claim or the APA claim if you have any further questions. You're welcome to do so if you'd like to do so. Your Honor, with respect to the other counts, we think that they all fall together in the sense that once you have Jenny May in its statutory authority to do what it did with respect to RMF, the merits of all the other claims in the complaint, however you construe them, fall away. It's not arbitrary and capricious to do exactly what the law says that you can do, and it's not arbitrary and capricious to split it and only do partially what the statute mandates. Do you concede that they pled that claim? I do not, Your Honor. I think the most fair reading, it is not an abuse of discretion for the district court to have read the complaint to not include an arbitrary and capricious claim. There were facts given in the background. Those facts, I believe, could support an allegation of a promissory estoppel claim, but there is no jurisdiction over a promissory estoppel claim. The United States has not waived its sovereign immunity over a promissory estoppel claim. A fair reading of the APA count that's been delineated as count one in the complaint, paragraph 88 is fatal to the argument that they make now. It quotes section 706 of the APA, and it takes the statutory text that would have said arbitrary and capricious, replaced it with an ellipsis, and yada yada'd right past the phrase that they say is so important now. I think they waived the argument below. I believe that the district court properly read the complaints to only include a contrary to law or an in excess of authority claim in count one of the complaint. Thank you. We have your argument. Thank you, Your Honor. Thank you, Your Honor. Just a few brief points in rebuttal. I want to talk about the statutory authority issue, but I want to pick up where my colleague left off on the APA, on the arbitrary and capricious issue, because I do think he's coming very close. I think he correctly conceded that there are facts alleged in the complaint that would make out a promissory estoppel claim, he said. I would respectfully submit those same facts also make out an arbitrary and capricious claim. Yeah, but how's a court supposed to know that when you delete arbitrary and capricious from your allegation? I'm looking at paragraph 88 right now. I mean, I understand the point. Where are the allegations in your complaint factually that the agency acted in an arbitrary and capricious manner? Oh, I'm happy to answer that. I mean, all over the complaint. Tell me some specifics. Sure. I think pages 13 through 15 and 18 through 20, I can get the exact page numbers. But the whole, I mean, respectfully, I'm not sure the parties are disputing this. There's the whole narrative about how the government promised to allow us to have access to the Capitol and then turned their back on that in the middle of the conference call. I mean, it's the whole factual narrative of the complaint. I understand that there is an ellipsis over the term arbitrary and capricious. But I think if you read cases like Johnson versus City of Shelby, those cases say you don't have to cite the statute at all. I do think it would be an unusual rule to say, you don't have to cite the statute at all. But if you cite most of the statute, that's not good enough if you don't cite the exact part of the statute that you are doing. You omitted the exact part. You affirmatively left it out and put ellipsis in. Which, if I were the district court, I would absolutely conclude means you were not pursuing that claim. The words arbitrary and capricious are nowhere in this complaint, are they? They were not. They are not. But the words. Period. What you gave me was not specifics. You just said all the pages, all the factual narrative of the complaint. What you talk about affirmatively is the authority of the agency, the statutory authority of the agency. And you don't talk about arbitrary and capricious at all. So let me give you, I think the best cites are ROA 13 through 15 and 28 through 30. Those are, I think I was getting the complaint, those are the complaint pages where I think, where we outline this whole factual narrative. Again, I understand what you're saying. But I think there's a difference between factual allegations and legal theories. And that's a distinction. I totally get that. But I also totally get the district court said, you didn't plead the claim. And you did nothing but travel on what the district court said was inadequate. I can't fathom that. Well, the district court, and I think maybe this court, in Johnson versus City of Shelby said, the plaintiff didn't plead the claim either. This is so far afield of what City of Shelby is. Because there, it was only a 1983 claim. That was all that could be at issue if I recall the case correctly. In other words, there had to be some sort of claim. And the only thing it could be was that one. That's not the case with your complaint. I agree that that is different. But I think the legal principle of Johnson, and I don't want to rely just on Johnson. We've cited a section of Wright and Miller. We've cited cases from this court that have said, this is not the era of code pleading. You do not have to cite the statutory text. That's our federal rules of civil procedure system. And I accept the point that the complaint could have been written more clearly. But I do think the law is quite clear that you don't have to cite the actual theory. And I also think government doesn't really dispute that we did cite the facts that underlie this arbitrary and policing theory. I just want to stubbornly go back to my question about the statute from your first time at the podium. I'm having trouble. Where in the statute do you get tales when Congress said mortgages? And the statute speaks in terms of the mortgages themselves, not securitized slices or later arising subcomponents. I mean, I think with respect, Judge Willett, I'm afraid that question assumes the premise, which is that mortgages include tales. I do think there is a reasonable dispute for a number of different reasons that mortgages has to be read that way. I think mortgages can fairly be read, and in fact, in the industry, is read to refer to the initial draw on these loans and that the tales are something separate. And as I said earlier, I think it's particularly relevant in this rather specialized context to look at the way the terms are used in the industry. And I would come back to the statutory structure again. I don't think my friend and I have a disagreement about the fact that the tales were not securitized. And so when you're talking about a statute that provides power over securitized instruments, I think it's quite important that the tales are not among those securitized interests. Maybe this is my most direct answer. If there's only one way under the sun to read mortgage, and it's the way you're suggesting, then I don't think we can win. But if there are other ways to read mortgage, I think all of these are strong clues that it should be read that way. Your interpretation argument is essentially an industry practice, industry gloss argument that you've got the text, but you've got to view the text through the prism of market custom. I think that plus, I don't want that statutory structure argument is quite strong, that if they didn't securitize this, it shouldn't be read to mean that mortgages cover things that are not securitized. I don't think that requires much industry understanding and so I think that's an independent basis for that. We respectfully ask the court to reverse on the statutory authority issue and remand for further proceedings on the arbitrary and capricious issue. Thank you. We have your argument. We appreciate both arguments. The case is submitted. Our next case for today is.